Nott, J.,
delivered the opinion of the court:
On the 28th of February, 1862, the President issued an executive order under the Non-intercourse Act 13th July, 1861. It authorized “ a partial restoration of commercial intercourse ” between the inhabitants of States previously declared to'be in insurrection and the citizens of loyal States, under rules and regulations to be prescribed by the Secretary of the Treasury. On the 28th of August, 1862, the Secretary prescribed certain *426 regulations concerning tills intercourse. Under these new regulations the claimant procured, in October and November, 1862, from the custom-house at Saint Louis, permits to buy cotton in Tennessee and Mississippi, “ within the lines of the United States Army.” On the 11th December, 1862, an order was issued by Major-General Grant declaring that “ on and after Monday, December 15, 1862, trade and travel will be open to Oxford, Miss., which place will constitute the southern limit until further orders, and beyond which persons not connected with the army are prohibited from passingHe also granted the claimant a pass “ to Oxford, Miss., in pursuance of Special Order No. 44,” being the order before referred to.
The claimant proceeded to Oxford, and there entered into negotiations for the purchase of cotton with persons residing in the neighborhood; but the agreements were.reduced to writing and signed at the plantation of one of the parties, nine miles southeast of Oxford, and five miles beyond the picket-line of the army. The agreements were alike, one, for instance, being for the sale of the u entire crop of cotton, supposed to be seventy bales, more or less, for which said (Jones agrees to pay 25 cents per pound on delivery at Oxford in good order.”
Before the cotton was delivered it was captured by the army and sent to Memphis. The seizure was made under a misapprehension that it belonged to certain disloyal parties. This being-ascertained to be an error, the commanding officer at Memphis ordered that the cotton be released to the owners. Thereupon the claimant paid the purchase-money to the owners, then in Memphis, and took from them a receipt acknowledging the payment, “ as per contract.” But before the cotton was actually released an order was received from General Grant directing that it be sold by the quartermaster. It was sold on the 19th of February, 1863, and the money derived from the sale was used for the ordinary purposes of the Quartermaster Department, but in 1865 was transferred to the abandoned and captured property fund.
Upon these facts two questions arise.
As to the first we think that the original agreement between the parties was illegal and void. The claimant’s permit restrained his purchases "within the lines of the United States Army;” the order of General Grant designated Oxford as the southern limit of trade and travel, and the law prohibited commercial in *427 tercourse with persons beyond those lines. The place of purchase was not within the enemy’s lines, and no treasonable or improper purpose actuated the party, but it was a place where he was prohibited from going, both by the law and the express orders of the military commander.
As to the second question which the case presents, we are of the opinion that the claimant-acquired a valid title. The transaction was within the United States lines; the original agreement was entirely at an end ; neither party had acted upon it; the claimant had not paid the purchase-money;'the vendor had not made delivery in Oxford, and the cotton had passed into possession of the Government, and was captured property. Affairs were in that condition which would enable the original owner, whose title had not been divested by capture, to sell it to any person, and he elected to sell it to the claimant, who gave for it a valuable consideration. The transaction also took place daring that interval in which the cotton had been returned, constructively, to the. vendor, though not to his actual possession. As between the parties the sale passed the title, and the specific transaction, being entirely beyond the scope of the original agreement, is not tainted with its illegality.
The judgment of the court is that the claimant recover the proceeds of two hundred and fifty-two bales of cotton, amounting in the aggregate to $92,598.40.